# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYRONDA JAMES,<br>    *Plaintiff*,<br><br>v.<br><br>RD AMERICA, LLC, *d/b/a* Restaurant Depot, JETRO HOLDINGS, LLC, *d/b/a* Restaurant Depot, RESTAURANT DEPOT, LLC, *d/b/a* Restaurant Depot,<br>    *Defendants*. | No. 3:16-cv-1445 (VAB) |

**ORDER**

In their recently-filed joint trial memorandum, the parties indicate that they intend to present the jury with evidence as to Defendants' tenth affirmative defense, in which Defendants claim that "[t]his Court lacks jurisdiction over this matter as both parties have agreed to resolve any dispute through arbitration." Answer, dated Nov. 10, 2016, ECF No. 13.

For the reasons explained below, the Court **STRIKES** Defendants' demand for a trial by jury on this defense under Rule 39(a)(2) of the Federal Rules of Civil Procedure, as Defendants have not demonstrated that there is any genuine dispute of material fact for which a trial by jury on this defense is warranted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the facts and prior proceedings, as detailed in the Court's March 5, 2019 Ruling and Order, is assumed. *See* Ruling and Order, dated Mar. 5, 2019 ("R & O"), ECF No. 62, at 2–12.

On March 5, 2019, the Court granted in part and denied in part Defendants' motion for summary judgment. R & O at 1, 33. The Court (1) denied summary judgment on Defendants' arbitration defense because Defendants had failed to show an absence of a genuine dispute of

material fact as to whether there was a valid agremeent to arbitrate and whether Ms. James's claims were within its scope, *id.* at 13–17; (2) granted summary judgment as to Plaintiff's claims of discriminatory firing and retaliation, *id.* at 20–25, 31–32; and (3) denied summary judgment as to Plaintiff's claim of hostile work environment because there is a genuine issue of material fact as to whether the use of racial epithets in her workplace was sufficiently severe or pervasive to have materially altered the terms and conditions of her employment, thereby allowing this single claim under Title VII to proceed to trial, *id.* at 25–31, 33.

On March 14, 2019, following a telephonic scheduling conference with the parties, the Court set this case down for a jury trial beginning on August 19, 2019, with jury selection to be held on August 5, 2019. Scheduling Order, dated Mar. 14, 2019, ECF No. 65.

On July 3, 2019, Defendants moved to continue jury selection to August 19, 2019—the day the trial was set to begin—due to a scheduling conflict for Defendants' counsel with an unrelated matter. Motion to Continue Jury Selection, dated Jul. 3, 2019, ECF No. 75.

On July 5, 2019, the parties filed their joint trial memorandum. Joint Trial Memorandum, dated Jul. 5, 2019 ("JTM"), ECF No. 76.

On July 8, 2019, the Court noted the parties' failure to file simultaneously motions *in limine* with their joint trial memorandum, as required by this Court's Chambers Practices, and therefore set a schedule for briefing on motions *in limine*. Amended Scheduling Order, dated Jul. 8, 2019, ECF No. 77.

On July 11, 2019, the Court granted Defendants' motion to continue and re-scheduled the jury selection for August 19, 2019, with trial set to begin thereafter. Order, dated Jul. 11, 2019, ECF No. 78; Notice of E-Filed Calendar, dated Jul. 12, 2019, ECF No. 79.

On July 16, 2019, Defendants moved *in limine* to preclude Ms. James from introducing any evidence, testimony, or references to a civil action Ms. James has filed, *James v. Jetro Holdings*, No. NNH-CV-15-6054069-S, currently pending before the Connecticut Superior Court for the Judicial District of New Haven. Defs.' Mot. Defendants argued that the state court action, in which Ms. James seeks damages for Defendants' alleged tortious interference with her business, is wholly irrelevant to the claims before this Court as it "seeks a completely different remedy with different legal theories outside of Title VII." *Id.* at 2. Defendants argued that any descriptions or references to the State Court Action therefore are irrelevant. *Id.* at 1, 3–4. Defendants further argued that "even if such evidence is relevant . . . the evidence is highly prejudicial and outweighs any probative value because it will confuse the issues (hostile work environment v. commercial issues) and mislead the jury (essentially informing the jury that Plaintiff's termination was not for just cause and retaliatory)." *Id.* at 4.

On July 22, 2019, Ms. James opposed Defendants' motion *in limine*, arguing that the request was overbroad because it would "preclude any testimony or evidence that may be relevant to the Hostile Work Environment [claim], but is even slightly connected in some way to the state court action," leaving Ms. James "open to random and unpredictable evidentiary objections from the defendants depending on how creative the defendants can be at linking each individual piece of evidence and testimony to the state case." Objection to Motion *In Limine* to Preclude Evidence, Testimony or References to Plaintiff's State Case, dated Jul. 22, 2019 ("Pl.'s Opp."), ECF No. 82.

On July 24, 2019, the Court held a final pretrial conference with the parties, reserving decision on the motion *in limine*. Minute Entry, filed Jul. 28, 2019, ECF No. 83. The Court

directed the parties to file their proposed voir dire questions and jury instructions by August 2, 2019, and to file a joint exhibit list and exhibit binders with the Court by August 9, 2019. *Id.*

On August 1, 2019, the Court granted in part and denied in part Defendants' motion *in limine*. Ruling and Order on Motion *in Limine*, dated Aug. 1, 2019, ECF No. 84. Defendants' motion was granted "only to the extent that evidence or testimony may not refer to the fact that there is a state court action pending." *Id.* at 6. Defendants' motion was "otherwise denied, without prejudice to raising any issues of relevance or prejudice during the trial." *Id.*

On August 2, 2019, the parties filed proposed jury instructions; only Plaintiff, however, opted to submit proposed voir dire questions. Defendants' Proposed Jury Instructions, dated Aug. 2, 2019, ECF No. 85; Plaintiff's Proposed Jury Instructions and FRCP Rule 47 Voir Dire Questions, dated Aug. 2, 2019, ECF No. 86.

On August 9, 2019, the parties filed a joint exhibit list and binders with the Court. As of this filing, the parties agreed to stipulate that four exhibits be admitted into evidence, but disagree as to thirty-four of Defendants' proposed exhibits and three of Plaintiff's exhibits.

On August 14, 2019, Defendants moved to continue the start of trial by two days, due to a scheduling conflict for Defendants' counsel with an unrelated matter. Emergency Motion to Continue Trial Date, dated Aug. 14, 2019, ECF No. 90.

On August 15, 2019, following a telephonic motion hearing, the Court granted in part and denied in part Defendants' emergency motion to continue. Amended Scheduling Order, dated Aug. 15, 2019, ECF No. 93. The Court decided to move ahead with jury selection on August 19, 2019, but continued the start of trial to September 4, 2019, with presentation of evidence to begin at 9:00 a.m. *Id.*

On August 19, 2019, following *voir dire*, the Court selected a jury. Minute Entry, dated Aug. 19, 2019, ECF No. 98.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 39(a)(2), a district court may, on its own motion, strike a party's demand for trial by jury on some or all of the issues for which a trial by jury is demanded if it "finds that on some or all of those issues there is no federal right to a jury trial." FED. R. CIV. P. 39(a)(2); *see Waterbury Realty, LLC v. Great Brook Realty, Inc.*, No. 3:07-cv-94 (AVC), 2015 WL 13621198, at *2 (D. Conn. Mar. 11, 2015) ("Rule 39(a)(2) provides that a court may act *sua sponte* to strike a case from the jury trial list . . . ."). The court need not strike the demand in full, however, but may instead narrow the scope of issues for trial to those on which there is a right to a jury trial. *Damsky v. Zavatt*, 289 F.2d 46, 48 (2d Cir. 1961) ("If a jury demand includes issues as to which a party is not entitled to a jury trial, the court ought not to strike the demand altogether but should limit it to the issues on which a jury trial was properly sought.") (citing FED. R. CIV. P. 39(a)2)).

## III. DISCUSSION

Generally, affirmative defenses to liability must be pleaded and proven by defendants. Accordingly, if any affirmative defense turning on disputed issues of material fact remains unextinguished after summary judgment, defendants are generally entitled to present such defenses as part of a jury trial. *See, e.g.*, *Donovan v. Dairy Farmers of Am.*, 53 F. Supp. 2d 194, 196 (N.D.N.Y. 1999) (discussing why juries may be charged with deciding 'mixed-motive' affirmative defense in discrimination cases); *Meinrath v. Singer Co.*, 87 F.R.D. 422, 431 (S.D.N.Y. 1980) ("The other defenses need not be examined individually. They raise obvious

5

issues of fact to be resolved at trial. The plaintiff's motion to strike the first, fourth, sixth, seventh and eighth affirmative defenses is denied.").

But Congress has provided a different procedure for pleading and proving the existence of a valid agreement to arbitrate as an affirmative defense—one which permits the court to proceed "summarily to the trial thereof." *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."). This expeditious procedure exists because, unlike most other affirmative defenses, a finding that the parties were required to arbitrate their claims does not generally extinguish or limit a defendant's liability, but instead directs those claims to be adjudicated in arbitration in accordance with the agreement.

A jury trial is only required under 9 U.S.C. § 4, however, if there is the "making of the agreement for arbitration" or the "failure, neglect, or refusal" to make an agreement for arbitration. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.") (citing 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.")); *see also Hirsch v. Citibank, N.A.*, 542 F. App'x 35, 38 (2d Cir. 2013) ("Because issues of fact exist 'as to the making of the agreement for arbitration, . . . a trial is necessary.'") (quoting *Bensadoun*, 316 F.3d at 175). Moreover, "[i]f no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue." 9 U.S.C. § 4.

The Court denied summary judgment because Defendants failed to meet their burden of showing an absence of a genuine dispute of material fact, as there was a lack of clarity about

whether the agreement in the summary judgment record was, in fact, the one signed by Ms. James. *See* R & O at 17 ("Here, however, it is not clear whether the document allegedly incorporated by reference into the signed signature pages is in the record. Absent clarity about whether the agreement in the record is the one signed by Ms. James, the Court cannot determine, at the summary judgment stage, whether a valid agreement to arbitrate was entered into, or whether these claims fall within the scope of that agreement. Defendants therefore do not meet their burden of showing an absence of a genuine dispute of material fact.").

In the five months since that ruling was issued, Defendants have not moved for the Court to reconsider that determination, either through a motion for reconsideration or a new motion for summary judgment. Defendants have also not specifically moved for a jury trial on the question of arbitration, as provided for in 9 U.S.C. § 4.

Despite its failure to so move, Defendants now seek to present evidence, in the context of a jury trial on Ms. James's hostile work environment claim, that Ms. James "is precluded from bringing the present action based on the arbitration agreement between the parties." JTM ¶ 8(c).

A number of courts have recognized that a party must specifically demand a trial on the making of the arbitration agreement in order to preserve that right under 9 U.S.C. § 4. *See, e.g.*, *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1349–50 (11th Cir. 2017) ("In its use of the term 'such issue,' Section 4 clearly contemplates that a party must make a *specific demand* for a jury trial on a specific issue related to the 'making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' to preserve its right to a jury trial on the issue. Here, it is undisputed that Burch's only jury demand came in the form of a general demand in his complaint. Because Burch failed to demand a jury trial on a specific issue related to the making of the arbitration agreement, he waived his right to a jury trial on that issue. Accordingly, the

7

District Court's decision to hold a bench trial on the issue of arbitrability is affirmed.") (emphasis added in *Burch*) (quoting 9 U.S.C. § 4); *King v. Capital One Bank (USA), N.A.*, No. 3:11-cv-68, 2012 WL 4404862, at *1 (W.D. Va. Sept. 25, 2012) ("[A] general jury demand in a complaint does not obviate the need to specifically request a jury trial under Section 4 of the FAA."); *see also Blatt v. Shearson Lehman/Am. Express Inc.*, No. 84 Civ. 7715 (CSH), 1985 WL 2029, at *2 (S.D.N.Y. Jul. 16, 1985) ("Plaintiff has not made a timely demand for jury trial under section 4 of the Act, which required such a demand on or before the return day of defendants' notice of application to compel arbitration, which was May 17, 1985. Accordingly the issue will be resolved by summary trial to the Court[.]").

But even if a specific, separate demand for a jury trial is not required, the Court cannot permit a jury trial on the arbitration issue.

First, Defendants have not shown that there is any genuine issue of material fact for trial regarding their arbitration defense.

Ms. James has previously admitted that she signed an agreement to arbitrate. *See* R & O at 15. Thus, the only remaining dispute of material fact is about the scope of any written agreement to arbitrate that Ms. James signed. Resolving that dispute will turn on: (1) a threshold evidentiary question of whether Defendants can produce and properly authenticate the agreement to arbitrate that Ms. James actually signed; and (2) the legal question of whether that agreement, if available and properly authenticated, covers the claims in this action.

But Defendants' proposed arbitration-related exhibits are the very same exhibits submitted in support of its summary judgment motion. *See* Exs. 14–15 to Defendants' Memorandum of Law in Support of Mot. Summ. J., dated Mar. 5, 2018, ECF No. 38-1; *see also* R & O at 15 ("Defendants have also placed three documents into the record on this issue: (1) an

Arbitration Agreement bearing the date 01/01/15 and unsigned, *see* Ex. 14 to Defs.' Mem.; (2) a document titled 'Acknowledgments,' signed by Ms. James and dated March 4, 2013, *see* Ex. 15 to Defs.' Mem.; and (3) a document titled 'Arbitration Policy Acknowledgment,' signed by Ms. James and dated March 29, 2013, *see* Ex. 15 to Defs.' Mem. Defendants' initial briefing referred to the first document, Exhibit 14, as though it was the contemporaneous arbitration agreement that Ms. James signed. *See* Defs.' Mem. at 14 . . . . All of the putative Agreement's pages include, in the bottom-right corner of the page, the phrase: '(ALL STATES EXCEPT CALIFORNIA 01/01/15),' suggesting a date of execution after her termination . . . . Absent clarity about whether the agreement in the record is the one signed by Ms. James, the Court cannot determine, at the summary judgment stage, whether a valid agreement to arbitrate was entered into, or whether these claims fall within the scope of that agreement.").

Absent any evidence of a complete and properly-authenticated agreement to arbitrate, there is no triable issue of fact for a jury as to the arbitration agreement, as there would be no legal basis upon which the Court could enforce the terms of that contract. *See, e.g.*, *Dreyfuss v. eTelecare Global Solutions-US, Inc.*, No. 08 Civ. 1115 (RJS), 2008 WL 4974864, at *6–7 (S.D.N.Y. Nov. 19, 2008) (denying motion to compel arbitration because the two pages of the agreement in the record did not constitute an enforceable contract as they did not provide the court the ability to determine what in fact the parties agreed to, and noting that "the requirement of a writing is intended to permit enforcement of arbitration agreements only in the face of competent evidence of the agreement's existence and scope.") (quoting *Durkin v. CIGNA Prop. & Cos. Corp.*, 942 F. Supp. 481, 487 (D. Kan. 1996)).

Second, a party has no right to invoke the protections of the FAA when it fails to present a court with the authenticated written terms of a valid arbitration agreement.

As the Supreme Court has recognized, "the federal policy" underlying the FAA "is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sci. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989) (emphasis added).

Since initially asserting the existence of an arbitration agreement in their Answer to Plaintiff's Complaint on November 10, 2016, Defendants have failed to present the Court with the terms of the agreement to arbitrate that Ms. James signed.

### IV. CONCLUSION

For the reasons explained above, the Court *sua sponte* **STRIKES** Defendants' demand for a trial by jury on their tenth affirmative defense under Federal Rule of Civil Procedure 39(a)(2).

Accordingly, the Court excludes evidence related to the arbitration agreement from being admitted at trial, as it is not relevant to the jury's determination of this case.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of August, 2019.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge